**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RIDWAN SHAKUR**                                                                                            **PLAINTIFF**

**V.**                        **CASE NO. 4:13CV00431 SWW/BD**

**JOHN RANDALL, et al.**                                                     **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**II.    Background:**

Plaintiff Ridwan Shakur, formerly an inmate at the Faulkner County Detention Center ("Detention Center"), alleges that his constitutional rights were violated when he was housed at the Detention Center.  The Court screened Mr. Shakur's complaint and amended complaints (#34, #42, #49, #52, #80) and found that he had stated the following constitutional claims: (1) deliberate indifference against Defendants Douglas, Hinton, Spaul,[1] Barden, Pruitt, Nester, Govia, Williams, and Teel for failing to provide nutritionally adequate meals (#14 at p. 4, #28 at pp. 1-2); (2) deliberate indifference against Defendants Randall, Vincent, and Hinton for failing to provide for his safety in reaching his upper bunk (#14 at pp. 6-7; #51 at p. 6); (3) deliberate indifference against Defendants Spaul and Pruitt for failing to provide him with sanitary eating utensils and drinking cup (#14 at p. 10, #51 at p. 6); and (4) deliberate indifference against Defendant Winters for failing to treat his serious medical needs.  (#51 at pp. 1-3)

---

[1] Defendant Spaul is listed on the docket sheet as Defendant Spal.  This appears to be a misspelling of his name, as indicated by Defendants' pleadings.  (#101, #102, #103, #103-4 at p. 2)  Accordingly, the Clerk is directed to correct the spelling of Defendant Spaul's name on the docket sheet.

Mr. Shakur has sued Defendants individually and in their official capacities. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (#14 at pp. 11-12)  After filing this lawsuit, Mr. Shakur was released from detention. (#96, #108)

Defendants[2] have moved for summary judgment. (#101)  Mr. Shakur has responded to the motion. (#107)  For the reasons set forth below, Defendants' motion (#101) should be granted.

## III.   Discussion:

### A.   Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming

---

[2] Defendants Spaul, Huffman, Teel, and Winters are not individually named in the introductory paragraph of the motion for summary judgment.  The motion, however, addresses the claims against them and is submitted on behalf of all of the Faulkner County Defendants.  (#101; #102 at pp. 1, 3, 5, 7-12, 16; #103 at pp. 2-3)  Accordingly, the Court will assume that all of the remaining Faulkner County Defendants have moved for summary judgment.

forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not come forward with enough evidence to establish a necessary element of a claim, the moving party is entitled to judgment as a matter of law on that claim. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

### B. Sovereign Immunity

Mr. Shakur's claims for money damages from the Defendants in their official capacities are barred, of course, by sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989)(holding that a civil litigant cannot recover money damages from a state actor sued in official capacity) Thus, official-capacity claims seeking money from the Defendants should be dismissed based on sovereign immunity.

### C. Declaratory and Injunctive Relief

Mr. Shakur's claims for declaratory and injunctive relief are now moot, because he has been released from the Detention Center and is no longer subject to the conditions described in the complaint. Further, there is no indication he is likely to return to the Detention Center. See *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012), reh'g denied (June 14, 2012), cert. denied, 133 S. Ct. 482 (U.S. 2012) reh'g denied, 133 S. Ct. 785 (U.S. 2012)(citing *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999))(because inmate is no longer subject to the policies he challenges, there is no live case or

controversy and claim for injunctive relief is moot); *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009)(citing *Pratt v. Corrections Corp. of America*, 267 Fed. Appx. 482 (8th Cir. 2008)(unpublished per curiam))(inmate's claims for injunctive and declaratory relief are moot when the inmate has been transferred and is no longer subject to the alleged unlawful conditions and policies)(other citations omitted); *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006)(a detainee's request for injunctive relief becomes moot upon his release from jail).  Defendants are entitled to summary judgment on Mr. Shakur's claims for declaratory and injunctive relief.

      **D.**      **Deliberate Indifference Claims**

Mr. Shakur was a pretrial detainee at the Detention Center when the events described in his complaint occurred.  The Court of Appeals for the Eighth Circuit has not "establish[ed] a clear standard for pretrial detainees," and "repeatedly [has] applied the deliberate indifference standard as is applied to Eighth Amendment claims made by convicted inmates." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010)(quoting *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006)(internal quotation marks omitted)).

To establish that conditions of confinement violate the Eighth Amendment, a prisoner must show that the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and that prison officials were deliberately indifferent to "an excessive risk to inmate health or

5

safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  That said, "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838. Moreover, a prison official cannot be held liable under § 1983 for negligent or even grossly negligent conduct.  *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002). Rather, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

      1.     Nutrition

Mr. Shakur claims that Defendants Douglas, Hinton, Spaul, Barden, Pruitt, Nester, Govia, Williams and Teel acted with deliberate indifference when they failed to provide him with nutritionally adequate meals.  (#14 at p. 4, #28 at pp. 1-2)  Clearly, "prisoners have a right to nutritionally adequate food." *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).  In order to establish that he has been denied nutritionally adequate meals, however, a prisoner plaintiff must come forward with some evidence to support this claim.  See *Pratt*, 267 Fed. Appx. at *1 (8th Cir. 2008)(unpublished per curiam)(inmate plaintiff's vegetarian diet did not violate his eighth amendment rights "as he did not rebut defendants' evidence that meals were nutritionally adequate").

In his affidavit, Defendant Randall states that the menu of meals served to detainees was approved by a dietician and provides adequate nutrition – at least 2300

calories per day. (#103-2 at p. 1) Mr. Shakur has not come forward with evidence to challenge Defendant Randall's testimony.

Further, he has not come forward with evidence indicating that any of the named Defendants knew that the dietician-approved meal plan failed to provide him a nutritionally adequate diet and put him at risk for injury. At his deposition, Mr. Shakur admitted that he did not know who was responsible for the calorie content or the preparation of his meals. (#103-1 at pp. 3-5) Accordingly, he has not come forward with evidence to establish a deliberate-indifference claim as to his meals, and Defendants are entitled to summary judgment.

  2. Safety

Mr. Shakur alleges that he injured his back while climbing to his top bunk on June 13, 2013. (#103-1 at p. 8) Mr. Shakur claims Defendants Randall, Vincent, and Hinton were deliberately indifferent to his safety when they failed to provide him a ladder. (#14 at pp 6-7; #51 at p. 6) Mr. Shakur has not established, however, deliberate-indifference.

Mr. Shakur filed a grievance about his fall the day after it happened, but he did not specifically request a ladder. (#103-5 at p. 1) The officer responding to the grievance advised Mr. Shakur that if he needed medical attention, he could complete a medical request form. (*Id*.) Mr. Shakur did not submit a medical request form relating to the incident until July 9, 2013, nearly a month later, when he complained that he had hurt his back in the fall. (#103-5 at p. 4)

Mr. Shakur's allegations amount to negligence, at most. The only way these Defendants could be held liable for deliberate indifference is if they had been aware that Mr. Shakur had a specific need for a ladder to access the top bunk and that the deprivation of a ladder would likely cause him serious risk of harm. At his deposition, Mr. Shakur testified that he did not speak with Defendants Randall or Vincent prior to or after his fall. (#103-1 at pp. 6-7) Accordingly, Defendants Randall and Vincent could not have been aware of Mr. Shakur's alleged need for a ladder.

Mr. Shakur indicated at his deposition that he was suing Defendants Randall and Vincent because "they oversee regulations and everything that goes on in the jail." Defendants Randall and Vincent, the Major and Captain of the Detention Center during the relevant time period, cannot be sued under 42 U.S.C. § 1983 on a theory that they are generally liable for the misconduct of those they supervise (also known as *respondeat superior* liability). See, *e.g.*, *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010)(no *respondeat superior* liability under 42 U.S.C. § 1983). "To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotation marks and citation omitted). Although Mr. Shakur claims generally that the lack of a ladder on his bunk was a safety risk, he has failed to allege that

Defendants Randall and Vincent were aware of, or that they were deliberately indifferent to, the alleged safety risk.

Mr. Shakur claims that, after his fall in June, he told Defendant Hinton that he needed something to stand on to reach his upper bunk. (#14 at p. 6, #103-1 at p. 9) But the post-incident notice is not sufficient to establish deliberate indifference.

Further, as Mr. Shakur acknowledged at his deposition, inmates could use detachable ladders as weapons. (#103-1 at p. 10) Consequently, the Detention Center might have had a legitimate security reason for not providing ladders. See *Whitley v. Albers*, 475 U.S. 312, 321–322, 106 S.Ct. 1078 (1986), quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979)("Prison administrators . . . [are] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")

Here, Mr. Shakur did not notify Defendants of his need for a lower bunk assignment, and he was not under a doctor's orders restricting him from climbing onto the top bunk. The lack of a ladder, under the circumstances, did not deprive Mr. Shakur of a necessity. See *Hawthorne v. Cain*, CIV.A. 10-0528-BAJ, 2011 WL 2973690 (M.D. La. June 8, 2011), report and recommendation adopted, CIV.A. 10-528-BAJ, 2011 WL 2941308 (M.D. La. July 21, 2011)("failure of prison officials to equip the plaintiff's bunk with a ladder simply does not amount to the deprivation of 'a minimal civilized measure

of life's necessities.'"); *Barbosa v. McCann*, No. 08–C–5012, 2009 WL 2913488, at *4 (N.D.Ill. Sept. 8, 2009)(citations omitted)(dismissing plaintiff's conditions-of-confinement claim premised upon the lack of a ladder to the upper bunk); *Powers v. Deatherage*, No. 02–1372, 2009 WL 856296, at *9 (C.D.Ill. March 30, 2009)(holding that a top bunk assignment is permissible unless a lower bunk was medically required or ordered by a physician). Accordingly, Mr. Shakur has not established deliberate indifference, and Defendants are entitled to summary judgment.

        3.      Sanitary utensils and dining area

Mr. Shakur alleges that Defendants Spaul and Pruitt delivered plastic spoons and plastic cups to inmates to keep in their cells. (#103-1 at pp. 14-15) He further alleges that Defendant Spaul stated that he would not reissue additional spoons or cups and that the utensils were to be used daily at meal time. (#14 at p. 10, #103-1 at p. 14) Mr. Shakur claims that his cell was not equipped with water hot enough to kill germs and did not have dish soap with which to sanitize his spoon and cup. (#103-1 at p. 15) Thus, he argues, Defendants Spaul and Pruitt were deliberately indifferent to his health and safety for failing to provide him with sanitary eating utensils. (#14 at p. 10, #51 at p. 6)

At the Detention Center, Mr. Shakur had access to a sink and soap. (#103-2 at p. 1) Additionally, he received cleaning supplies daily to clean his living quarters. (*Id.*) Mr. Shakur never complained of, nor was he treated for, symptoms related to food poisoning. No reasonable fact-finder could conclude that, under the circumstances, Mr.

Shakur was exposed to a substantial risk of serious harm by eating with utensils or drinking from a cup that he was responsible for cleaning. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

### 4. Serious Medical Need

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove that a prison official failed to provide adequate medical treatment, Mr. Shakur must show that he suffered from an objectively serious medical need, and the named Defendant "knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). An inmate cannot create a triable issue of fact by responding that he believes that more should have been done. *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997). The mere disagreement with treatment decisions does not rise to a constitutional level. *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006). In fact, even gross negligence is not enough to support a claim of deliberate indifference to a serious medical need. *Id*.

Mr. Shakur claims to have injured his back while climbing to his top bunk on June 13, 2013. (#103-4 at p. 1) He filed a grievance about his fall the next day and was told that if he needed medical attention, he could complete a medical request form. (*Id.*, #103-5 at p. 1) On June 26, 2013, Mr. Shakur submitted a medical request regarding asthma.

(#103-4 at p. 1, #103-5 at p. 3) He did not mention a back injury. (#103-4 at p. 2, #103-5 at p. 3) On July 9, 2013, Mr. Shakur submitted a medical request alleging back pain from a fall. (#103-4 at p. 2, #103-5 at p. 4) Nurse Winters saw Mr. Shakur the following day and told him to take over-the-counter ibuprofen from the medical cart. (#103-4 at p. 2, #103-5 at p. 5) Mr. Shakur submitted another medical request form on October 3, 2013, which Nurse Winters received on October 9, 2013. Mr. Shakur was scheduled for the next available appointment to see the doctor on October 17, 2013. (#103-4 at p. 2, #103-5 at p. 10) An October 17, 2013 x-ray revealed no definite acute fracture, only old rib fractures. (#103-4 at p. 2, #103-5 at p. 11)

Mr. Shakur claims that Defendant Winters was deliberately indifferent to his serious medical needs by failing to conduct a physical examination or by failing to refer him to the doctor when she saw him on July 10, 2014, after he complained of back pain. (#51 at p. 1) But at that time, Mr. Shakur did not ask to see a physician, and it had been nearly a month since the fall he alleged caused his pain. (#103-5 at p. 5) Defendant Winters addressed his complaint of pain by prescribing Ibuprofen, a pain reliever. Mr. Shakur's disagreement with his treatment does not rise to the level of a constitutional claim.

Mr. Shakur also claims that Defendant Winters delayed treating his serious medical need. (*Id*. at p. 2) He has not come forward with evidence, however, to support this allegation. He submitted a medical request form on July 9, 2013, and was seen by

Defendant Winters on July 10, 2013. (#103-5 at pp. 4-5) He submitted another medical request form around October 3, 2013, which Defendant Winters received on October 9, 2013. Mr. Shakur was scheduled for the next available appointment to see the doctor. Based on this evidence, Defendant Winters did not delay treating Mr. Shakur.

But even if these facts did show an unreasonable delay in treatment, Mr. Shakur has not come forward with evidence to show that a delay caused objectively serious harm. See *Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010)(citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)). Dr. Stewart, who examined Mr. Shakur on October 17, 2013, ordered an x-ray. The x-ray did not reveal an acute fracture. (#103-4 at p. 2, #103-5 at pp. 11-14) Based on this undisputed evidence, Mr. Shakur has not established deliberate indifference to a serious medical condition, and Defendant Winters is entitled to summary judgment.

E.     **First Amendment**

Mr. Shakur claims Defendants Bowen, Huffman, and Nester violated his First Amendment rights when they confiscated his personal mail. (#14 at pp. 8-9) Specifically, Mr. Shakur alleges that Defendant Bowen brought him a note saying that a letter to him from his fianceé was being withheld because it had perfume on it. He alleges that Defendant Bowen told him that Defendant Huffman stated he could not give the mail to Mr. Shakur and that the letter would have to be returned or placed with his

personal property. (#103-1 at p. 11) Mr. Shakur testified that during a later visit with his fianceé, she told him some of the things that were in the letter. (*Id.*)

Mr. Shakur also claims that Defendant Nester withheld a letter on July 20th because the letter had blue ink on it. (#103-1 at p. 13) He never found out what was in that letter. (#103-1 at p. 13)

Inmates have a First Amendment right to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "Even though the courts have recognized that censorship is not permitted for privileged mail, . . . it is well established that intrusions into a prisoner's personal mail for security reasons do not contravene the strictures of the Constitution." *Bumgarner v. Bloodworth*, 768 F.2d 297, 301 (8th Cir.1985)(relying upon *Wolff v. McDonnell*, 418 U.S. 539, 576-77, 94 S.Ct. 2963, 2984-2985 (1974) and *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir.1981)(per curiam)). The United States Supreme Court has repeatedly allowed inspection of personal mail where "the legitimate government interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 412-413, 94 S.Ct. 1800, 1810-1811 (1974).

Here, one of Mr. Shakur's letters was confiscated for being written with colored ink. At a hearing held in the case of *Travis Philmlee v. Karl Byrd et al*, No. 4:10cv221 (E.D. Ark. 2011), Defendant Randall testified that detainees are not allowed to receive personal mail written with colored ink because colored ink can be used as a vehicle to

send detainees drugs. *Travis Philmlee v. Karl Byrd et al*, No. 4:10cv221 (E.D. Ark. 2011), at docket entry #49 at p. 4, recommended disposition adopted at docket entry #51. Following the hearing, Magistrate Judge H. David Young found that the policy was reasonable and recommended that the detainee's claim be dismissed with prejudice. *Id*. at p. 8. Here, the rejection of Mr. Shakur's personal mail on the same basis does not rise to the level of a constitutional violation.

Mr. Shakur's complaint about the confiscation of the personal letter from his fianceé also fails to rise to the level of a constitutional violation. This isolated incident of Mr. Shakur's personal mail being confiscated does not amount to a violation of the First Amendment. See *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)(internal quotations and citations omitted)("isolated incident [of opening an inmate's legal mail outside of inmate's presence], without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation."). Further, here Mr. Shakur admits that he was able to speak with his fianceé shortly after the letter was confiscated and, through the conversation, was able to access the information that was in the letter.

Mr. Shakur has not established that Defendants Bowen, Huffman, and Nester violated his first amendment rights. Accordingly, Defendants are entitled to summary judgment.

## IV.  Conclusion:

The Court recommends that Defendants Randall, Vincent, Douglas, Bowen, Hinton, Pruitt, Spaul, Huffman, Barden, Nester, Govia, Teel, Winters, and Williams's motion for summary judgment (#101) be GRANTED.  All of Mr. Shakur's claims should be DISMISSED, with prejudice.

DATED this 8th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE